Grabau, J.
The parties to this contract action are before the court on defendants’ motions for summary judgment. Plaintiff Goudreau Corporation (Goudreau) contracted to clean a sewer pipe in defendant City of Springfield (Springfield). Goudreau alleges that its performance was thwarted by Springfield’s failure to *548 accurately represent the condition of the sewer. Goudreau also brings a claim against Marine & Industrial Diving, Inc. (Marine) which prepared a report of the sewer’s condition. For the following reasons Marine’s motion is allowed and Springfield’s motion is allowed in part and denied in part.
FACTS
In July, 1991, Marine provided Springfield with the report of an assessment that Marine did, in June, 1991, of a certain sewer pipe in Springfield. Marine was under contract to provide Springfield with diving services from July, 1990 - June, 1991. This assessment was to determine the cause of sewer overflow into the nearby Connecticut river.
The report covered 1640 linear feet of a total of 2210 linear feet running from Clinton Street to the Memorial Bridge. The report included schematic drawings of the sewer pipe, in cross section, showing what was found on inspection. The sewer pipe, which is 48" in diameter was found to be occluded, at various points, by anywhere from 0-30" of material. Such material was identified as mud, grit, gravel, sand, sludge, floccu-lant, hard packed grit (which a probe rod could not penetrate), brick, embedded tar, embedded cobble, embedded rope, and embedded sticks and limbs.
Sometime early in 1992, approximately seven months after Marine’s inspection, Springfield began the process of soliciting bids on a contract to clean 2,776 linear feet of the sewer pipe.[2] The report prepared by Marine was part of the contract specifications. Bidders were specifically advised not to rely on the information in the report and to satisfy “[themselves] as to the conditions existing . . . and the type of equipment required.” Bid, §1.02. Marine’s contract with Springfield did not indicate that Marine’s report would be used as part of a bid package to clean the sewer pipe, nor did Springfield later tell Marine that its report was being so used.
A clause in the contract specifications put the responsibility on the bidder to determine what the condition of the sewer was. Bid, §1.02. Goudreau understood that the clause “puts the entire thing on the contractor.” The contract was ultimately awarded to Goudreau on April 3, 1992, effective May 5, 1992. The contract price for cleaning and inspection of the sewér pipe was $198,984. Goudreau relied on the Marine report in bidding this figure. Goudreau never requested access to the site to do its own inspection and never requested further information on the meaning or intent of the contract documents. Goudreau acknowledges that the report did not cover the entire length of pipe to be cleaned and that there were numerous existing blockages in the sewer pipe. Goudreau proposed, and Springfield accepted, to clean the pipe hydrologically with a 6" trash pump and 6" suction hose. Section 2.0(G) of the bid provided that all equipment and methods used be approved by Springfield. Goudreau anticipated the job would take 30 days. It was also agreed that if a mandrel could pass uninterrupted through 95% of the diameter of the pipe it (the pipe) would be deemed acceptably clean.
Shortly after May 13, 1992, nearly one year after Marine’s inspection, Goudreau commenced cleaning the sewer. On June 4, 1992, Goudreau submitted application for payment of $60,310 for work completed through May 31, 1992. Payment in the amount of $56,295 was received from Springfield on August 10, 1992. The record does not indicate how much of the pipe had been cleaned when the first application for payment was made.
Subsequent to this time Goudreau discovered that Marine’s report, then more than a year old, did not accurately describe the materials that Goudreau found in the sewer pipe. Goudreau had found broken glass and razor blades, oil/diesel fuel, boulders, rocks and stones in addition to the types of materials noted in Marine’s report. Goudreau asserts that at the time the contract was made Springfield knew that the diver’s report was inaccurate. Goudreau further asserts that these conditions, known to Springfield, were latent and unforeseeable.
At some point, not disclosed in the record, Goudreau requested an equitable adjustment of the contract pursuant to G.L.c. 30, §39N. This request was based on the allegedly “differing subsurface and latent physical conditions” in the sewer.
Springfield and Goudreau agreed to an alternate method for assessing the cleanliness of the pipe that Goudreau had worked on. Accordingly, Subsea did a dive and reported on the condition of approximately 1,000 feet of the pipe between manholes 6 and 8. Goudreau submitted an application for payment for this work on October 30, 1992. The amount of that application is not disclosed and it remained unpaid when the complaint in this action was filed on March 12, 1993.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.RCiv.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, *549 Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass. at 17. “(T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
Count I - Negligence
Plaintiffs first count is against Marine for negligence. Plaintiff asserts that the count should be read as one for negligent misrepresentation. Massachusetts has adopted the Restatement (Second) of Torts §552(1) (1977) regarding negligent misrepresentation: “One who, in the course of his business, . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.” Lawton v. Dracousis, 14 Mass.App.Ct. 164, 171 (1982).
In a case, such as this, where there is no privity between Goudreau and Marine, Marine must know that Goudreau will rely on its representation. Rae v. Air-Speed, Inc., 386 Mass. 187, 193 (1982). It is undisputed that Marine did not know that their report would be used in the bid package. Thus, Marine cannot be liable to Goudreau.
Count II- Negligent Misrepresentation
In Count II Goudreau alleges that it reasonably and “detrimentally relied” on bid specifications, including Marine’s report, which Springfield knew or should have known were grossly inaccurate.
When a plaintiff has been cautioned, in writing, about a condition of a contract it may not then ignore the warning. Page v. Frazier, 388 Mass. 55 (1983) (plaintiff who was told that defendant represented bank’s interest and that plaintiff might get his own attorney was not entitled to rely on defendant’s performance). In the instant case, Goudreau knew that it bore the responsibility for determining the conditions of the sewer pipe and the type of equipment required to clean it. Bid, §1.02(A). Springfield specifically disclaimed any responsibility for conclusions that Goudreau might make based on the Marine report, or any other information supplied by Springfield. Id.
Goudreau must bear the consequences of its choice, after disclosure by Springfield, to elect the riskier path of not doing its own investigation. Page, supra at 66.
Count III- Breach of Warranty
Goudreau asserts that Springfield expressly and impliedly warranted what the conditions were in the sewer pipe. The undisputed facts indicate that there was no express warranty. Addendum No. 1 to Bid, p. 2 (“The diver’s report is not to be construed to be a warranty of system details or conditions”). Bid, §1.02(A) (“[Springfield] assumes no responsibility for any conclusions or interpretation made by [Goudreau] on the basis of the information made available by [Springfield]”).
No warranty will be implied where contract terms expressly preclude reliance on information provided to a contractor. D. Federico Co., Inc. v. Commonwealth, 11 Mass.App.Ct. 248, 252 (1981). A contractor bears the consequences when it ignores an express disclaimer and relies on the information provided rather than conducting its own investigation. Daniel O’Connell’s Sons, Inc. v. Commonwealth, 349 Mass. 642, 647 (1965). Therefore, Springfield is not liable on Count III as it made no warranty to Goudreau.
Count IV- Breach of Contract
In this count, Goudreau, without any specificity as to time, date or contract provisions lists seven acts or omissions which it alleges constitute a breach of contract by Springfield. The factual record is not sufficiently developed to decide this count.
Springfield correctly notes that G.L.c. 30, §39N applies to contracts of the type at issue here. Although the language made mandatory by that statute is not in this contract, the court will treat it as appearing there. The statute provides that an equitable adjustment be made when the contracting authority has found that the physical conditions at the site “differ substantially or materially from those shown on the plans or indicated in the contract documents or from those ordinarily encountered and generally recognized as inherent in the work . . .,” G.L.c. 30, §9N, and that such difference has caused a change in the methods required and cost of the work. G.L.c. 30, §39N. A question of fact exists as to what is “ordinarily encountered and generally recognized as inherent” in sewer cleaning. Goudreau’s ability to determine what is inherent in the work of sewer cleaning is irrelevant: the statute requires that the contracting authority do an investigation and make such evaluation after a contractor makes a claim. Id.
Count V - Quantum Meruit
A party may recover in quantum meruit only when there is no valid contract. Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 249 (1993). The validity of the contract in the instant case is not disputed so plaintiff is left to its contract remedies, if any. Cf. Lord v. Town of Winchester, 355 Mass. 788, 789 (1969) (municipality not liable even in quantum meruit, where contract not properly authorized).
Count VI - Declaratory Judgment
Goudreau seeks declaratory judgment, pursuant to G.L.c. 231A, on various issues. As issues of material fact exist, this count is not ripe for summary judgment.
*550 Count VII- G.L.c. 93A
The question of whether a governmental entity may be liable on a G.L.c. 93A claim is unsettled. U.S. Leasing Corp. v. City of Chicopee, 402 Mass. 228, 232 (1988). It is, however, clear that a c. 93A defendant must engage in trade or commerce. Id. at 232, citing G.L.c. 93A, §11.[3] Although the statutory definition includes some activities which constitute trade or commerce, it is not an exclusive list. Riseman v. Orton Research, Inc., 394 Mass. 311, 313 (1985). Plaintiff argues that by passing along charges for maintenance and repair of the sewer system to its users pursuant to G.L.c. 83, Springfield engages in trade or commerce. The court finds that levying of sewer assessments and fees pursuant to G.L.c. 83 does not constitute trade or commerce. Therefore, Goudreau may not recover on a G.L.c. 93A claim against Springfield.
ORDER
It is therefore ORDERED that summary judgment enter for defendant Marine on Count I and for defendant Springfield on Counts II, III, V and VII.

 None of the parties offers any explanation of the 566’ discrepancy between the length of pipe in Marine’s report and the length in the contract.

 “ ’Trade’ and ‘commerce’ include advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and property, tangible or intangible, real, personal or mixed, any security as defined in subparagraph (k) of section four hundred and one of chapter one hundred and ten A any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situated . . .” G.L. c. 93A, §l(b).